J^DREW, J.
Plaintiff, Wendell Short, and defendant, Helen Anders, entered into a verbal contract concerning the clearing of land owned by Mrs. Anders and her husband. The property was located near Calhoun, Louisiana. There is no dispute that the price for the work to be done on the 4tk- to 5-acre tract of rural land was $1,500.00. However, the parties later disagreed on whether the work was only to include “bushhogging,” or was also to include bulldozing. Finding the former, the trial court ruled in favor of Short. We affirm.
FACTS
According to Short, the verbal agreement was only for bushhogging, which Short performed on two separate occasions. He testified that on the first occasion he spent approximately “six hours or better,” and on the second occasion he spent approximately five and a half hours. Short further testified that after the first occasion, he was paid $750.00, and was told that the work wasn’t done properly. He then returned to do additional work, but was never paid the $750.00 balance.
Short stated that the land was hilly and one hill on the property was “kind of dangerous,” having stumps. His tractor became stuck on one stump. He also stated that the tractor got stuck in some holes on the property and that he hired a “sub” to help him with the work. James Shell testified that he went with Short on the first occasion and that the property was “in bad shape.” Shell described brush, most of which was “like six feet tall grass.” He also described “three feet holes” in the land where the tractor could not run. Shell testified that he actually ran the tractor off into one of 12the holes. However, Shell did not know anything about the agreement between Wendell Short and Helen Anders.
Short’s second witness at trial was Ben Owens, who accompanied Short on his second trip to work on the property. Owens testified that he did most of the walking around, picking up sticks and big limbs to avoid tearing up the “bushhog.” Owens confirmed that the land was hilly and had a lot of “wash out” on it where timber had previously been cut, and the land also had deep holes. Pictures of the property were introduced, but the pictures showed the condition of the property after it had been cleared, not before.
In contrast to Short’s evidence, Mrs. Anders testified that two and a half acres of the property had already been “bush-hogged” and that Short was to finish the remaining “bushhogging” on the other side of the property, and, in addition, he was supposed to smooth an area on the property where trees had been buried and water had washed off some of the dirt. According to Mrs. Anders, after Short’s first visit to the property, he had done none of the smoothing, and only part of the “bushhog-ging.” Short then went back to the property, allegedly without waiting as he had promised until the Anders came back from out of town, and ended up doing some work on somebody else’s property. Mrs. *924 Anders testified that even after Short’s second trip to the property, he still had not taken care of the area where the land had been “washing out” from rain. Mrs. An-ders testified there was no way that she would have agreed to pay Short $1,500.00 for “bushhogging” alone when |3someone else had already done bushhogging work for her for “way less” than $1,500.00.
Anders’ husband corroborated her testimony that the property already had been partially “bushhogged” and that some of the property in the pictures introduced into evidence did not belong to the Anders. According to Mr. Anders, two acres had been bushhogged for $100.00 prior to Short’s work on the property. The An-ders also introduced a copy of a bid on the property from A & A Fence Co. which indicated a bid price of $700.00 for “bush-hog” work in addition to including bids for fencing and hay bales around the pond on the property.
At the end of the trial, the court noted the absence of a written contract and remarked that the court was having to “fill in the blanks” of what was actually discussed between Short and Mrs. Anders. In the absence of witnesses to the agreement, the court noted that it basically had to make a credibility call by listening to the testimony and looking at the pictures. The court took the matter under advisement, gave Mrs. Anders additional time to bring a clearer copy of a check that she had introduced into evidence, and ultimately rendered judgment in favor of Short for $750.00. A counterclaim by Mrs. Anders also was dismissed. The trial court concluded in the judgment that Short contracted with Mrs. Anders for “bush-hogging services” which Short did in fact perform.
DISCUSSION
An appellate court may reverse the finding of a trial court only when a reasonable factual basis does not exist for the finding and the finding is |4clearly wrong or manifestly erroneous. Anderson v. Johnson, 39,109 (La.App. 2d Cir.1/26/05), 892 So.2d 174. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact’s findings because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what was said. Id. Where a fact finder’s conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Hines v. Audio Plus, Inc., 38,644 (La.App. 2d Cir.8/18/04), 880 So.2d 265. The task of the reviewing court is solely to ask whether the fact finder’s resolution of the conflicting evidence was reasonable in light of the record as a whole. Id. An appellate court should not substitute its opinion for the conclusions made by a trial court which is in a unique position to see and hear the witnesses as they testify. Leal v. Dubois, 2000-1285 (La.10/13/00), 769 So.2d 1182, rehearing denied, 2000-1285 (La.11/17/00), 774 So.2d 155. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Id.
In the instant case, the trial court’s decision rested on a credibility determination. Short and Mrs. Anders were the only two witnesses to the agreement. The pictures of the property after it had been cleared, and the copy of the bid referring simply to $700.00 for “bushhogging” without more particularity, do little to affect the weight of the evidence. Likewise, the ^testimony of the other witnesses, both *925 pro and con, does not lead us to conclude that the court committed manifest error. When we accord the proper deference to the trial court’s credibility determinations, we must affirm the trial court’s judgment.
Accordingly, the judgment is AFFIRMED at appellant’s costs.
APPLICATION FOR REHEARING
Before STEWART, CARAWAY, DREW, MOORE, and LOLLEY, JJ.
Rehearing denied.